No. 3760

Second Circuit

LE BLANC v. GUY

(June 2, 1930.  Opinion and Decree.)
(July 5, 1930.  Rehearing Refused.)

Overton & Hunter, of Alexandria, attorneys for plaintiff, appellee.

S. I. Foster, of Leesville, attorney for defendant, appellant.

DREW, J. Plaintiff instituted this suit against defendant in the enforcement of a contract of lease for the year 1929, and to recover certain property claimed by plaintiff in the possession of defendant. Writs of provisional seizure were issued to enforce his lessor's lien, and sequestration to enforce his claim of ownership.

Plaintiff leased to defendant under verbal contract his farm for the year 1929, as he had previously done in 1928 and 1927. The rental for 1927 was a cash rental of $200; the defendant paid part of this rent; and plaintiff carried him for the balance. Under the 1928 agreement, plaintiff was to receive one-fourth of the crop, and he received that portion for that year, with the exception of the potato crop, which was sold by defendant, and plaintiff credited with his one-fourth on the account defendant kept of his dealings with plaintiff. Under the 1929 contract, plaintiff was to receive one-fourth of the cotton, corn, and potatoes and one-half of the cane.

During the month of August, or the early part of September, 1929, plaintiff notified defendant that he did not expect to lease the place to him for the following year, and, as usual, when lessor and tenant decide to part ways, the trouble began. Defendant picked and ginned and sold two bales of cotton without the knowledge or consent of plaintiff, and also moved some bee equipment and hogs and beehives from plaintiff's place to another place not owned by plaintiff, which will hereafter be spoken of as the "Lake Place."

On September 13, 1929, plaintiff instituted this suit claiming a lessor's lien on the crop grown on the place and all other movable property situated thereon, alleging that defendant had removed and disposed of two bales of cotton, and had gathered two other bales which he was preparing to dispose of without accounting to plaintiff for his one-fourth; that he had good reason to believe that defendant would remove and dispose of all the property on the place on which plaintiff had a lessor's lien. He sets out in his petition the number of bales of cotton grown on the place as five, and the number of bushels of potatoes to be 120, and corn to be 300 bushels and the sugar cane 100 tons. He had issued a writ of provisional seizure, and had seized thereunder all the movable property, together with the crops then on his place and the property that had been moved to the Lake place. He claims the ownership of 55 pieces of bee equipment that had been removed to the Lake place and half interest in 20 head of hogs that had been removed to the Lake place, and five beehives and 40 pounds of wax foundation. He alleges, in conformity with article 275 of the Code of Practice and Act No. 190 of 1912, that he is the owner of said property, and that it lies within the power of defendant to part

with, conceal, and dispose of said property, and that a writ of sequestration is necessary to protect his rights in the premises and under said writ seized the above-described property.

He further sets up an open account against defendant for balance due on 1927 rent, and other items he alleges he has furnished to defendant, and prays for judgment against defendant declaring plaintiff to be the owner of the property sequestered on the Lake place and for recognition of his lessor's lien and privilege on the crop and other movables seized under the writ of provisional seizure, and that he be entitled to one-fourth of the cotton, corn and potatoes, and one-half of the sugar cane grown on the place in the year 1929, for the maintaining of both writs, and for judgment on the open account in the amount of $88.25, less a credit of $21.60.

Defendant filed a motion to dissolve the writ of provisional seizure, but the record does not disclose that it was ever tried or passed on by the lower court, except in the trial on the merits. We are therefore bound to assume that it was referred to the merits, and we will treat it as such. Defendant answered, admitting the quantum of the crop, as alleged by defendant, and admitted the contract of lease, with the exception that he alleges that plaintiff was to furnish fertilizer for the cane and pay half the expense of gathering it, and to furnish a mill to make it into syrup; he denied that he had removed any of the crop and that any of the property removed to Lake place was the property of plaintiff; he further alleges that plaintiff after entering into the contract, notified him that he wanted his part of the cotton in the seed, and that he had weighed out one-fourth and left it in the

house for plaintiff. He alleges that plaintiff violated his agreement by not furnishing fertilizer for the cane and failed to furnish mill to grind the cane, and should not be entitled to half the cane and that the agreement should be reduced to one-fourth of the cane. He alleges that he tendered plaintiff a full bale of cotton prior to filing of the suit, which was refused by plaintiff. He sets up an account against plaintiff extending over the years 1927, 1928, and 1929, amounting to $12.75 more than the account of plaintiff against him, and prays in reconvention that he have judgment against plaintiff in that amount and dissolution of the writs of provisional seizure and sequestration, and for damages in the sum of $50 for dissolving the writs. By amended answer, he sets up an additional item of $25 for orchard he had planted on plaintiff's place; $38.40 for honey taken by plaintiff; $4 for garden fence wire; $5 for labor in building said fence; $100 for loss of hogs seized by failure to sell or kill them while fat; and asking that the amount of attorney's fees for dissolving the writs be increased to $100.

On these issues the case went to trial in the lower court, and judgment was rendered rejecting plaintiff's demands on the open account and rendering judgment in favor of defendant in reconvention in the sum of $12.73. Plaintiff was recognized as the owner of, and entitled to one-fourth of, the cotton, corn, and potatoes and one-half the cane; granting to defendant judgment against plaintiff for the expenses of providing a mill, and one-half of the expense of saving the cane. Held that all hogs removed to the Lake place, with the exception of six partnership hogs, belonged to defendant, and that defendant was the owner of all other property removed to the Lake place. Further held that plaintiff should elect whether he would keep the 25 fruit trees planted by defendant and the wire around the garden, and, if he did elect to keep them, he must pay to defendant $25 for the trees and $4 for wire, otherwise defendant could remove same; that his decision must be made within thirty days. Rejected demands of defendant for honey alleged to have been taken by plaintiff and for damages alleged to have been caused by sequestration of the hogs as of nonsuit; reserving to defendant the right to sue for any damages caused him by this suit; dissolving the writs of provisional seizure and sequestration and awarding damages to defendant in the sum of $50 as attorney's fees.

From this judgment, defendant has appealed.

## PROVISIONAL SEIZURE

Although defendant in his answer denied that he had removed any of the property off the place, after plaintiff had proved conclusively that he had removed, ginned, and sold two of the five bales of cotton, and that defendant's son had told him that he intended removing two more, he admitted that he had sold two bales of cotton and gotten the money for them, that he did so without consulting plaintiff, and did not attempt to account to him for any part of the money. He relies solely on the fact that he had weighed out one-fourth of the cotton and left it in the cotton house for plaintiff, due to the fact that plaintiff had said that he wanted his cotton in the seed. He also admitted that he had removed from the place of plaintiff to the Lake place, 16 head of hogs, 6 of which he admitted were partnership hogs of himself and plaintiff; that he had removed also beehives and bee equipment and some wax foundation, claiming it was his personal

property or else borrowed from plaintiff, and that plaintiff had knowledge and gave his consent to the removal; that a part of the bee equipment, etc., was removed nearly a year before filing the suit.

Defendant relies on case of La. Farm Bureau Cotton Growers' Co-op. Ass'n v. Clark, 160 La. 294, 107 So. 115, 119, in which the court said:

"The defendant, in the present case, leased his plantation during the year 1924 to tenants on the share system, or for one-fourth of the cotton produced. It is evident, therefore, that, after paying advances and settling with the landlord for his one-fourth of the crop, the tenants had the undoubted right to take their part of the crop off and sell it, or to sell it in the field. * * *
"Under the laws of this state, however, the landlord has no legal control over the portion of the crop falling to his tenants working under share contracts, as the tenant and the landlord stand upon equal footing as to ownership in the crop produced. The tenant, as well as the landlord, is equally master as to his interest, and may sell or otherwise dispose of the same, after paying his advances and delivering to the landlord his part of the crop."

The above decision cannot be of much comfort to the defendant here, for he removed the cotton from the place and sold it without the knowledge or consent of the plaintiff and before he had delivered to the plaintiff, his landlord, his part of the crop. He did not give plaintiff the opportunity of being present at the weighing of the cotton or the division of the cotton— a right he most certainly had. One piece of cotton may be good and of one grade and another piece may be entirely different, and plaintiff had the right to have the division of cotton made in his presence, if that was the contract, or he should have been given, at least, the opportunity to be present.

The fact that there was cotton in the field or in the cotton house sufficient to deliver plaintiff his one-fourth was not a compliance with the obligation of defendant, and the fact that he did move two bales of cotton off the place and sold them without accounting to plaintiff for his one-fourth is sufficient grounds for the issuing of a writ of provisional seizure under the laws of this state. And the removing from the place of any personal property was sufficient for the issuing of the writ of provisional seizure, regardless of the intention of defendant when moving it. He was putting it beyond the reach of plaintiff, who had a lessor's lien on all property on the place, except that which is excepted by article 2707 of the Civil Code.

In Dillon vs. Porier, 34 La. Ann. 1103, the court held that:

"The landlord is not concerned with the tenant's honest intent to pay, but in the defeat of his privilege by removal."

In Honeycut v. Whitten, 149 La. 891, 90 So. 230, 234, the court said:

"Concluding, as we do, that plaintiff's rights at the time of the institution of this suit were those of a lessor, it was immaterial, or the purposes of the exercise of that right, whether the rent was due or to become due, since the right to seize the property that was subject to his privilege was the same in either case, and was dependent only upon his truthfully making the affidavit required by C. P. 287."

In Hyman v. Hibernia Bank & Trust Co., 144 La. 1083, 81 So. 718, 721, the court said:

"When the lessor sues for his rent, whether due or not due, if he fears that the property on which he has a lien may be removed from the building, he may provisionally seize the same by virtue of his lien. C. P. art. 287. What is the basis of the right to seize for the rent not due?

It must undoubtedly be the lien as lessor."

"The right of lessor to provisionally seize whether rent be due or not due, is not affected by the fact that property remaining on premises (lessee having removed some) affords ample security. Lessor has the right to determine the amount of security for himself. Millot v. Conrad, 112 La. 928, 36 So. 807.

In case of Dillon v. Porier, cited supra, the court said:

"Fraudulent intent on the part of the lessee is not an essential element in such case. Nay, the best and most honest intent will not avail him, because the crucial inquiry is, not whether the tenant did or did not intend to pay his rent, but whether he intended to remove the property upon which the privilege rests of securing its payment. The lessor has good reason to believe that the lessee will remove from the premises the property upon which he has a privilege, and thereby deprive him of his lien, the sole condition for the issuance of the writ exists. The intention of the lessee in removing it may be honest. His purpose may be thus to obtain the means for paying the rent, but that in nowise impairs the right of the landlord to prevent the removal by a seizure. While on the premises, it is absolutely subject to the landlord's claim. If removed, he has only a limited time to pursue it, and only while owned by his tenant. The law, therefore, does not require that he shall concern himself about his lessee's honest intent to pay, but only whether his intent is to remove the property and destroy the lien, whether the motive of the removal be good or bad."

The very fact that defendant removed from the place of plaintiff two bales of cotton and sold same without the knowledge or consent of plaintiff, or without first having settled with plaintiff for his one-fourth of the cotton, is sufficient to sustain the writ of provisional seizure, not considering the other property removed from the place by defendant on which plaintiff had a lessor's lien and privilege. The rule may seem harsh, and in some instances it is, but it is nevertheless the law and jurisprudence of this state.

The writ of provisional seizure should have been sustained by the lower court recognizing plaintiff's lessor's lien and privilege on the property seized on the place owned by him and recognizing him as owner of one-fourth of the cotton, corn, and potatoes raised on that place during the year 1929, and recognizing him as owner of one-half of the cane raised.

Plaintiff paid for the seed cane, amounting to more that $21, and the defendant hauled it at a cost of $9.60. Defendant was given credit for the $9.60 in settling the account between the parties by the lower court, and is part of the judgment of $12.73. The question of fertilizer has no bearing in the case, the evidence being very conflicting as to that part of the agreement and the preponderance in favor of plaintiff. However, defendant is not asking for damages for diminution of cane crop for lack of fertilizer, and did not buy any himself. It has no bearing on the case. As to the mill to make the cane into syrup, it is shown that the cane was not ripe for saving until the latter part of November or December, and that on the 10th of September, plaintiff notified defendant that he had secured a mill for that purpose, and was told by defendant that he had made other arrangements. If defendant had made other arrangements, at that time of the year, he was hasty; and, when plaintiff offered to furnish him a mill at least two months before time to use it, we think plaintiff complied with that part of the agreement.

This case was tried in the lower court before the cane was ripe for saving, and this court cannot say that plaintiff will not comply with his agreement to pay half of the expense of saving the cane before

he is put in default. He could not be put in default until the time arrives to save the cane and make it into syrup; therefore that part of the judgment of the lower court wherein judgment was rendered in favor of defendant and against plaintiff for one-half the expense of saving and grinding the cane is erroneous, and should be reversed.

The lower court rendered judgment requiring plaintiff to elect within thirty days whether or not he would pay $25 for some fruit trees, and, if he refused to pay for them, that defendant could remove them from the place. We think that part of the judgment is erroneous. The testimony shows that plaintiff furnished defendant with 25 trees to be planted at defendant's request, and the testimony that defendant planted other trees is very indefinite, and there is nothing certain as to what trees he planted. If he planted any, he did so without the knowledge or consent of plaintiff. The judgment as it stands would give defendant the right to dig up any 25 fruit trees on plaintiff's place and move them off. The evidence is too indefinite and uncertain to base a judgment on, and that part of the judgment is reversed.

The claim for damages caused from the sequestration of the hogs and the claim for honey taken by defendant were non-suited in the lower court. We think this an error. Defendant failed to establish his claim for the honey, and his demands for same should have been rejected, and the seizure of hogs will be dealt with later in this opinion.

## WRIT OF SEQUESTRATION

Plaintiff sequestered five beehives, with bees; 55 pieces of bee equipment; 40 pounds of wax foundation; 20 head of hogs, all found on the Lake place, claiming same as owner, and alleged that it was within the power of defendant to dispose of, conceal, and part with said property.

The lower court found that all the property belonged to the defendant, with the exception of six hogs, which he found to be partnership hogs of plaintiff and defendant, and dissolved the writ of sequestration. However, on the trial of the case, defendant admitted that 48 pieces of the bee equipment were the property of the plaintiff. There can be no dispute over that, and he admits that six head of the hogs were partnership hogs. It is true that in his answer he denied that he had taken any property belonging to plaintiff to the Lake place.

On the admission of the defendant that the 48 pieces of bee equipment and six hogs were owned in part by plaintiff, we think the writ of sequestration should have been sustained as to that part of the property seized.

Under Act No. 190 of 1912, in order to sustain a writ of sequestration is to allege that it is within the power of defendant to dispose of, conceal, or part with the property in his possession that belongs to plaintiff or that plaintiff has a privilege on. This allegation was properly made by plaintiff, and it need not be supported by proof of his fear. The fact that defendant has the power to part with, dispose of, or conceal is all that is necessary to sustain the writ when ownership is proven of the property sequestered by the plaintiff. Barnett Furniture Co. v. Martel, 3 La. App. 234; Gueydan v. Ranch Co., 156 La. 397, 100 So. 541; Bomer Co. v. Shapiro, 148 La. 736, 87 So. 729; Lowden v. Robertson, 40 La. Ann. 825, 5 So. 405.

Property of joint owners may be sequestered at the instance of one of the owners for good cause. Interstate Land Co. v. Doyle, 120 La. 46, 44 So. 918; Blanchard v. Luce, 19 La. Ann. 47.

When one of the owners denies the ownership of the other in and to the property jointly owned, the writ of sequestration will issue. In the case of Adeline Sugar Factory v. Theriot, 126 La. 471, 52 So. 667, the court said:

"In cases involving ownership and possession, the fear of the plaintiff must be considered to be justified by the mere fact of the denial of his ownership, coupled with the present opportunity of the defendant to dispose of the property."

This case was decided before the Act of 1912, and, when thought of in that light, makes it much stronger from the plaintiff's standpoint. The court cited therein the following cases: Boatner v. Wade, 14 La. Ann. 695; Lannes v. Courege, 31 La. Ann. 74; Yun Loy Co. v. Rosser, 52 La. Ann. 1728, 28 So. 251. And holding in cases involving mere privilege some further proof was required.

The judgment of the lower court in dissolving the writ of sequestration is erroneous, and must be reversed. The sequestration should have been sustained insofar as it applied to the six partnership hogs and the 48 pieces of bee equipment, and plaintiff recognized as the owner thereof. We will not disturb the lower court's finding as to the five beehives with bees and the 40 pounds of wax foundation.

The lower court has attempted to adjust the difference between plaintiff and defendant in their open accounts, and has filed a tabulation of same in which he finds that defendant has a claim of $3.03 against plaintiff, plus $9.70, for hauling the seed cane, and we are not inclined to disturb his findings on these items.

Plaintiff in the past has been very kind to defendant; allowed his daughter to spend some months at his home in Shreveport while taking a business course, with no charge for board or room; and, when defendant's wife was sick in New Orleans, plaintiff kept her in his home to recuperate, and furnished her with transportation to her home—all without charge to defendant—and, as he testifies, he did not expect defendant to charge him for every little thing that he performed for him, such as hauling one load or putting together some bee equipment, etc.; however, defendant either performed these little jobs at the request of plaintiff or with his knowledge and consent, and is legally entitled to recover for his work.

Due to the many phases of this case and our finding, it will be necessary to redraft the judgment.

It is therefore ordered, adjudged, and decreed that there be judgment in favor of plaintiff, Homer P. Le Blanc, and against the defendant, William J. Guy, maintaining the writ of provisional seizure sued out herein on the property seized thereunder and recognizing the plaintiff's lessor's lien and privilege thereon.

It is further ordered, adjudged, and decreed that plaintiff recover of defendant one-fourth of the cotton, corn and potatoes, and one-half of the cane raised on the place during the year 1929.

It is further ordered, adjudged, and decreed that the writ of sequestration sued out herein be maintained insofar as the seizure of 48 pieces of bee equipment and the six head of partnership hogs seized on the Lake place, and the plaintiff is recognized as the owner of the 48 pieces of bee equipment and one-half interest in the six hogs.

It is further ordered, adjudged, and decreed that the defendant do have and re-

cover judgment against the plaintiff in the sum of $12.73, with legal interest thereon from judicial demand until paid.

It is further ordered, adjudged, and decreed that all other demands of defendant in reconvention against plaintiff be rejected except the wire around the garden of the value of $4, purchased by defendant, which he has the right to remove.

It is further ordered, adjudged, and decreed that the costs of the lower court as to the writ of sequestration as provisional seizure be paid by defendant and the costs of suit as to the open account be paid by plaintiff; the costs on reconvention demand of defendant to be paid by plaintiff; costs of appeal to be paid by defendant and appellee.