385 So.2d 554 (1980)
In the Matter of Succession of Joseph Clevlanc VICE, Sr.
Marie Leone Woods VICE, Surviving Spouse in Community, Plaintiff-Appellant,
v.
Marie Brandon VICE, Administratrix, et al., Defendants-Appellees.
No. 7627.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
Rehearing Denied July 16, 1980.
*556 J. Minos Simon and Gerald J. Block, Edward J. Milligan, Jr., Lafayette, for plaintiff-appellant.
Lester J. Gauthier, Jr., Lafayette, Funderburk & Conque, J. Isaac Funderburk, Abbeville, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and LABORDE, JJ.
DOMENGEAUX, Judge.
In this succession dispute the decedent's fourth wife and surviving spouse, Marie Leone Woods Vice (appellant), appeals from an adverse judgment alleging the trial court committed reversible error in:
(1) Granting the issuance of a preliminary injunction and continuing all protective orders issued prior to the trial of this matter;
(2) Holding that all immovable property and improvements thereon were acquired by the decedent prior to his marriage to Leone Woods Vice and constituted the separate property of appellant's former husband, the decedent;
(3) Holding that there was no valid donation of the certificates of deposit as well as interest paid on the said certificates and further rejecting appellant's claim to the certificates and interest as a dation en paiement;
(4) Holding that appellant was not entitled to restitution of her separate and paraphernal property expended for the benefit of the community of acquets and gains existing between appellant and her former husband, the decedent; and
(5) Holding that plaintiff was not entitled to restitution of expenses of last illness *557 and funeral expenses on behalf of Clevlanc Vice, Sr., for the reason that these expenses were paid with commingled funds.
For the following reasons we reject all but the first of appellant's assignments of error.
This particular dispute arose during the course of the succession proceedings when appellees, Marie Brandon Vice, decedent's third wife and executrix of his estate, and decedent's two sons, his forced heirs, filed a motion to traverse the proces verbal of the public inventory of the succession property.
After a trial on the merits of appellees' motion to traverse, the trial court characterized the movable property as either separate or community,[1] found certain immovable property to be the separate property of the decedent, and found the six certificates of deposit currently in the name of Mrs. Clevlanc Vice, Sr. (Marie Leone Woods Vice, appellant) and deposited in Guaranty Federal Savings & Loan in Lake Charles, to be community property and ordered one-half of the principal amount of the certificates and one-half of the interest to be delivered to the Clerk of Court in Vermilion Parish. Various claims made by appellant for reimbursement of her separate funds allegedly used for the benefit of the community were rejected by the trial court. Finally, the trial court enjoined appellant and Guaranty Federal from alienating or transferring the certificates of deposit to any person other than the Vermilion Parish Clerk of Court in compliance with the judgment. This appeal followed.

1. PRELIMINARY INJUNCTION
Appellant asks this Court to award her damages including attorney's fees for having to obtain the dissolution of a temporary restraining order issued September 7, 1978, and extended on four occasionsSeptember 15th, September 25th, October 4th, and October 20th, 1978.[2] This order was made final in the trial court judgment.
Appellant submits that the temporary restraining order of September 7, 1978, and extensions thereof, were issued improperly and should be dissolved.
La. C.C.P. Art. 3601 provides in part:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law...."[3]
The courts of this state have repeatedly defined irreparable injury, loss, or damage as:
"... that injury, loss or damage for which the injured party cannot be compensated adequately in damages or for which his damages cannot be measured by a pecuniary standard. City of Lake Charles v. Lake Charles Ry., Light & Waterworks Co., 144 La. 217, 80 So. 260; Louisiana State Board of Medical Exam. v. Tackett, La.App., 70 So.2d 207."
Amacker v. Amacker, 146 So.2d 672, at 675 (La.App. 1st Cir. 1962). See also National Pacific Corporation v. American Commonwealth Financial Corporation, 348 So.2d 735 (La.App. 1st Cir. 1977).
La. C.C.P. Art. 3603 provides that a temporary restraining order will be granted *558 where it "clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury, loss, or damage will result ..."
All that was alleged by appellees in their motion to obtain a restraining order was: Decedent's estate had a possible claim to six certificates of deposit totalling $100,000.00 deposited in Guaranty Federal Savings & Loan in Lake Charles; Mrs. Clevlanc Vice, Sr. (appellant) had the power to withdraw all sums represented by the six certificates of deposit on deposit in Guaranty Federal; petitioner (Marie Brandon Vice, appellee) had "reason to believe" that the appellant would withdraw the funds; for her to have done so would have been prejudicial to the estate and would have resulted in irreparable injury, loss, or damage. On the basis of these allegations of fact and of two affidavits, one by one of decedent's sons, the other by appellees' attorney, which concluded that irreparable harm would result if the temporary restraining order was not issued, the trial court granted the order.
From the facts alleged by appellees, it is clear that the only injury which could be sustained is the loss of a sum certain in money, an injury which could, if inflicted, be readily compensated in money and easily measured by pecuniary standards. Not only does appellees' motion for a temporary restraining order fail to aver that a judgment against appellant would be valueless either because of her insolvency or for other reasons but also the record convincingly establishes the financial ability of the appellant to respond in judgment in the event she is cast herein.
Amacker v. Amacker, supra, is squarely on point in this respect. There the court found the plaintiff was not entitled to injunctive relief because of the reasons above expressed in the preceding paragraph and because he was entitled to the legal remedy of sequestration. (See La. C.C.P. Article 3501, et seq.) Since plaintiff had an adequate remedy at law (sequestration) the Court declined to impose the harsh remedy of injunctive relief. Using the same rationale, the Second Circuit in Danzie v. Rutland, 232 So.2d 303 (La.App.2nd Cir. 1970), reached a similar result. For the same reasons,[4] we find that the temporary restraining order originally issued on September 7, 1978, and subsequent extensions thereof, were improvidently and improperly granted and must be dissolved.
La. C.C.P. Article 3608 provides in part that attorney's fees are recoverable when a temporary restraining order is dissolved after a trial on the merits. Roy v. Union Bank, 347 So.2d 286 (La.App.3rd Cir. 1977) has interpreted this portion of the statute to mean that the temporary restraining order can be dissolved by the Court of Appeal which can then grant damages and/or attorney's fees for the first time on appeal. We will follow the Roy case and grant appellant attorney's fees in the amount of $500.00.
In making this award, we note that the District Court, earlier in these proceedings, dismissed a similar temporary restraining order for failure to comply with the requirements of the Code of Civil Procedure and granted appellant's attorney $350.00. We think the $500.00 granted here adequately compensates appellant's attorney for services rendered in connection with the dismissal of the temporary restraining order at the trial level and on appeal. This Court granted an identical amount in the recent case of Cook v. Ed. Francis Chevrolet, Inc., 365 So.2d 1178 (La.App.3rd Cir. 1978).
There has been absolutely no showing that appellant was damaged in any other way by the issuance or continuance of the temporary restraining order. Accordingly, we make no award for that item since damages (other than attorney's fees) have not been shown.
*559 Our opinion is not altered by the fact that appellees ultimately succeeded at the trial level and in this Court (as will be discussed later) in proving that the certificates of deposit were community assets. An action for damages for the wrongful issuance of a temporary restraining order does not depend upon the resolution of the underlying dispute in favor of or against the party seeking the restraining order. Central Louisiana Electric Company v. Pointe Coupee Electric Membership Corporation, 182 So.2d 752 (La.App.1st Cir. 1966). Here, appellant is entitled to claim attorney's fees and damages because the temporary restraining order which issued without a showing of irreparable harm infringed upon her right to alienate or transfer $100,000.00 worth of certificates of deposit. See Roy v. Union Bank, supra. This right existed regardless of whether the certificates were later held to belong to appellant or to the community.

2. IMMOVABLE PROPERTY
The trial court held the immovable property to be separate property of the decedent, finding that the parties had stipulated in open court that all immovable property at issue and improvements thereon were acquired by decedent prior to his marriage to appellant.
The record discloses that appellant, in response to paragraph 5 of appellees' "motion to traverse" pleading, filed an answer which admitted that the land and home (the immovable property at issue) should be listed on the inventory as separate property of decedent's estate. Appellant further stated in the answer that she had no objection to showing this property as "Separate Property". At page 6 of appellant's brief this admission is confirmed.
At the beginning of the trial counsel for both sides stipulated to the pre-marriage acquisition by decedent of the immovable property by introducing into evidence two cash deeds executed in 1965 and 1966, many years before decedent was married to appellant. In both cash deeds decedent represented himself as a single man. The deeds read that decedent was thrice-marriedthe third time to Marie Brandon (the executrix) but was also thrice-divorced. Appellant, when introducing the deeds into evidence, never disputed decedent's representation that he was single when he purchased the property.
During the course of the trial Marie Brandon, executrix, testified. She claimed to have been married to decedent for almost thirty years, beginning in March of 1944 and ending, presumably, in November of 1973, when she and decedent entered into a compromise and settlement agreement.[5] The substance of the settlement was that the executrix conveyed any interests she may have had in all movable and immovable property acquired by her and her late ex-husband during the duration of their marriage. In return for this conveyance she received $11,000.00 from decedent. Appellant also caused to be dismissed, with prejudice, the divorce suit she filed against decedent in 1973. (See Footnote 5).
Appellant's argument on appeal is that she has a claim to the immovable property acquired by decedent prior to her marriage to him in July of 1973 because the compromise and settlement agreement was executed in November of 1973 subsequent to appellant's marriage. Appellant contends this was an acquisition during the existence of the community existing between herself and decedent within the contemplation of La. C.C. Article 2402.[6] Therefore, the argument goes, whatever interest the executrix conveyed is community property of which she has an interest. We reject appellant's argument and affirm the trial court's finding that the immovable property was the separate property of decedent.
*560 Because of appellant's answer to the motion to traverse and her stipulation with respect to the cash deeds, she is estopped from attempting to show the property was not acquired by decedent until after he wed his fourth wife (appellant). Her answer and stipulation amount to a judicial confession that the immovable property was acquired by decedent prior to his marriage to appellant.
With respect to judicial confessions, Article 2291 of the Civil Code provides:
"Art. 2291. The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It can not be divided against him.
It can not be revoked, unless it be proved to have been made through an error in fact.
It can not be revoked, on a pretense of an error in law."
The Supreme Court very recently reviewed the jurisprudence interpreting Article 2291 in Cheatham v. City of New Orleans, 378 So.2d 369 (La. 1979). Much of that review is pertinent to this case and is quoted here:
"The jurisprudence interpreting this statute is well settled to the effect than an admission made in a pleading is within the purview of this statute. It is also well settled that a judicial confession is a party's explicit admission of an adverse factual element and that it has the effect of waiving evidence as to the subject of the admission, of withdrawing the subject matter of the confession from issue. Crawford v. Deshotels, 359 So.2d 118 (La. 1978); J. H. Jenkins Contractors, Inc. v. Farriel, 261 La. 374, 259 So.2d 882 (1972); Jackson v. Gulf Ins. Co., 250 La. 819, 199 So.2d 886 (1967); Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122 (1913); McCorkle v. Service Cab Co., 305 So.2d 589 (La.App. 4th Cir. 1974); Guilbeau v. Fireman's Fund Ins. Co., 293 So.2d 216 (La.App.3rd Cir. 1974). There is also jurisprudence to the effect that under La.Civ. Code art. 2291, once a party has made a judicial confession, and it has been relied on by the other party, the party making the admission may not take a contrary position later. Crawford v. Deshotels, supra; and McCorkle v. Service Cab Co., supra. The above has been held where the admission was made in the trial court and a contrary position was urged on appeal. McCorkle v. Service Cab Co., supra; and Faust v. Pelican Plumbing Supply, Inc., 215 So.2d 373 (La. App.4th Cir. 1968)."
378 So.2d at 374-375.
Since appellant admitted that the immovable property and improvements thereon were acquired by decedent prior to his fourth marriage, that factthe date of acquisitionwas withdrawn from consideration and was no longer an issue to be decided by the trial court. Appellant will not now be heard to assert a contrary position by saying that decedent did not really acquire the immovable property until he executed the compromise and settlement.
Our conclusion that appellant stipulated to the date of acquisition, and that appellees relied on that stipulation during trial, is borne out in the record. Appellees' counsel at all times objected to the relevancy of evidence concerning the executrix's marriage to and divorce from decedent and the compromise and settlement. Counsel correctly pointed out that both sides stipulated to the date of acquisition and asserted that there were no pleadings raising this date as an issue. The trial court agreed that he felt the evidence was irrelevant but allowed it for whatever bearing it may have had on the executrix's credibility.
Assuming that there had been no judicial confession or, if one existed that appellant had proved it was made through an error in fact,[7] the evidence tending to prove that the immovable property was *561 purchased while decedent was married to the executrix is inconclusive.
The only evidence of decedent's marriage to and divorce from his third wife was adduced from the third wife's testimony and from the compromise and settlement agreement. She (the executrix) testified that their marriage existed until 1973, in which year she filed an action for divorce from decedent. According to the compromise and settlement agreement, she alleged in her petition for divorce that the divorce decedent obtained in Florida in 1953 was invalid; that if it was valid she and decedent later established a common law marriage while residing together in Georgia and Texas; that since the establishment of said marriages she and decedent established a community of acquets and gains consisting of considerable property both movable and immovable; and that she wanted to partition the property. The decedent opposed her petition for divorce, alleging that the 1953 divorce was valid; that the parties never thereafter held themselves out as husband and wife, although they did live together at times; and that a community of acquets and gains never existed between the parties since the 1953 divorce. Marie Brandon was never granted a divorce. Upon her receipt of $11,000.00 from decedent she had her divorce suit dismissed with prejudice and apparently acquiesced in the 1953 divorce obtained by decedent.
The couple was judicially divorced in 1953 and no evidence was shown that the divorce was invalid. The immovable property was acquired by decedent, alleging he was single, in 1965 and 1966, after his third marriage ended and before his fourth began. Thus, there is a sufficient evidentiary basis to reject appellant's claim and conclude that the property belongs entirely to the estate.
Furthermore, simply because the compromise and settlement agreement was executed subsequent to decedent's fourth marriage does not establish the presumption that the subject immovable property and improvements thereon were acquired during decedent's fourth marriage because the compromise and settlement does not specify any property to which the appellee may have had a claim.

3. CERTIFICATES OF DEPOSIT
The trial court held that the six certificates of deposit on deposit in the Guaranty Federal Savings & Loan institution were community property, rejecting appellant's claim that decedent either donated the certificates of deposit as well as the interest thereon to appellant, or that he effected a dation en paiement of the certificates of deposit to appellant. We affirm the trial court's finding in this respect.
The record shows that the certificates of deposit were acquired during the marriage between decedent and his fourth wife. These certificates of deposit were payable to Mr. or Mrs. Clevlanc Vice, Sr. There is evidence that decedent, in July of 1976, attempted to change the name on the certificates of deposit from Mr. or Mrs. Clevlanc Vice, Sr. to just Mrs. Clevlanc Vice, Sr. instead, but was unsuccessful because he did not have the certificates of deposit with him at the time. He was successful, however, in having future interest payments made to his wife only. Thereafter, in December of 1976, or January of 1977, the name change on the certificates of deposit was effected, but not until after Mr. Vice died on December 1, 1976. Thus, he never successfully transferred the certificates of deposit to his last wife during his lifetime.
That the certificates of deposit, or the interest payable thereon, were never successfully donated to appellant is not at issue here. Cases abound in our jurisprudence that bank accounts, or other amounts on deposit in banks or savings institutions, are incorporeal movables which can be subjects of inter vivos donations only upon the execution of an authentic act. Succession of Palermo, 359 So.2d 1040 (La.App.4th Cir. 1978); Vercher v. Roy, 171 La. 524, 131 So. 658 (1930); Succession of Grubbs, 170 So.2d 256 (La.App.2nd Cir. 1965); Basco v. Central Bank & Trust Company, 231 So.2d 425 (La.App.3rd Cir. 1970). See also C.C. Articles 1536, 1538, and 1539.
*562 There is no authentic act of record, nor is there any evidence that an authentic act, showing that the decedent donated the certificates of deposit to his wife, was ever executed. Thus, the trial court was correct in finding that no valid donation was made.
Moreover, the appellant conclusively testified that her deceased husband did not intend to donate the interest payments to her:
"Q. One other question mam, is it true that your husband agreed to let you have the interest payments on the CDs before he died?
A. No."
(See Record at 325). Lest she misunderstood the question it was repeated to her but her answer was the same. There being no donative intent, the act of changing the interest payments to appellant's name alone was without legal effect, and no donation was made. Succession of Brewster, 259 So.2d 388 (La.App.2nd Cir. 1972).
Appellant's main argument is that the decedent succeeded in effecting a dation en paiement (a giving in payment) of the certificates of deposit to his wife. The trial court rejected this argument also, finding the evidence establishing a dation en paiement to be insufficient. We agree.
La. C.C. Article 2655 provides:
"The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due."
With respect to this Article our jurisprudence has held:
"Three essentials are necessary to maintain the validity of a dation en paiment: First, a real indebtedness of the husband to the wife; second, just value of the property transferred for the existing debt; third, delivery of the property to the wife. Rev.Civ. Code, arts. 2446, 2655, and 2656; People's National Bank v. Voorhies, 134 La. 303, 64 So. 120."
Krauss Co. v. Godchaux, 13 La.App. 607, 128 So. 673, at 674 (Orl. 1930).
Our reading of the evidence offered at trial persuades us that the evidence of indebtedness is lacking. The only evidence in support of appellant's claim is her own testimony that the decedent was indebted to her as well as documentary evidence of cancelled checks and notes, which allegedly evidence appellant's payment of decedent's debts. These documents do not, however, tend to corroborate appellant's testimony because they are not self-evident. They show only that certain bills or other debts were paid. They do not show these debts to have been contracted by decedent prior to his fourth marriage and later paid by appellant with her separate funds. Absent appellant's testimony to the contrary, these bills or debts may just as well have been community debts paid with community funds.
Our courts regard a party's self-serving testimony as extremely weak when attempting to establish a claim against a succession:
"A litigant's testimony in her own favor to establish a large claim against a succession is received with great caution. It is, in itself, of the weakest character, and, unless strongly corroborated, cannot serve as a basis for judgment. Cutler v. Succession of Collins, 37 La.Ann. 95 (1885); Caldwell v. Turner, 129 La. 19, 55 So. 695 (1911); Succession of McBurney, 162 La. 758, 111 So. 86 (1927); Willis v. Gordon, 143 So.2d 798 (La.App. 1 Cir. 1962); Succession of Oulliber v. Oulliber, 204 So.2d 625 (La.App.4 Cir. 1967). Under LSA-C.C. art. 2282, her credibility is diminished because she is a party."
Succession of Broussard, 306 So.2d 399 (La. App.3rd Cir. 1975).
The trial court obviously did not rely upon appellant's testimony and also felt the documentary evidence did not adequately corroborate appellant's testimony. Our review of the record discloses no error committed by our trial brother.[8]
*563 Having agreed with the trial court that an indebtedness from decedent to appellant in an amount commensurate with the value of the certificates of deposit has not been satisfactorily proven, we find it unnecessary to consider whether decedent delivered the property to his wife.[9]

4. RESTITUTION OF SEPARATE AND PARAPHERNAL PROPERTY
Appellant testified that her separate funds were commingled with community funds. Our jurisprudence is established that:
"... when large sums of community funds are commingled indiscriminately with separate funds, to the extent that the separate funds are no longer capable of identification, all of the commingled funds become community property. Succession of Land, 212 La. 103, 31 So.2d 609; Magnolia Petroleum Co. v. Crigler, 12 So.2d 511 (La.App.); Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478; Slater v. Culpepper, 233 La. 1071, 99 So.2d 348."
Paxton v. Bramlette, 228 So.2d 161 (La. App.3rd Cir. 1969).
A wife is entitled to restitution of her separate property at the time of dissolution of the community if the funds delivered by the wife to the husband and commingled with community funds can be traced to her separate funds or if the benefit to the community is established with reasonable certainty. Guilott v. Guilott, 326 So.2d 551 (La.App.3rd Cir. 1976). In the absence of compelling proof that a strong and substantial economic advantage inured to the benefit of the community, the wife's restitution claim will be denied. Succession of Russo, 246 So.2d 26 (La.App.4th Cir. 1971), writs refused, 258 La. 760, 247 So.2d 861.
Documentary evidence establishes that appellant did deposit separate funds in the community savings account. However, many thousands of dollars were deposited in and withdrawn from the joint checking account shared by decedent and appellant during their 3½ year marriage. Many of these deposits were made by decedent. Appellant failed to satisfy the trial court and this Court that her separate funds were used for the benefit of the community and not for her own personal use. Although appellant testified that she gave decedent large sums of her separate funds to pay off his debts, other evidence shows that decedent, a rice farmer and racehorse owner, was capable of paying off his own debts. Appellant may have written the checks discharging some of the debts, but those funds might well have been provided by decedent. Using the same rationale as that found in Paxton, we affirm the trial court's denial of appellant's claim to restitution.

5. EXPENSES OF LAST ILLNESS
The trial court found the expenses of decedent's last illness to be community expenses for which no reimbursement is due. Although appellant testified that she paid the expenses of the last illness, she did not establish that these expenses were paid from an account containing only her separate funds. Her testimony was not refuted, but the trial court is not bound to accept as fact all or any of her testimony. Here, the court evidently did not. In this finding, we detect no manifest error.
The trial court found the funeral expenses to be a debt of decedent's estate. Appellant's brief lists as error the trial court holding that appellant is not entitled to restitution of funeral expenses. However, appellant offers no proof whatsoever that she has paid any funeral expenses. In fact, the record discloses a claim against the *564 estate filed by the funeral home for the entire cost of the funeral indicating that the funeral expenses had not been paid by anyone.

DECREE
For the above and foregoing reasons, the judgment of the District Court is reversed insofar as it approves of and perpetuates the temporary restraining order and extensions thereof issued against Marie Leone Woods Vice, appellant, which forbade her from expending $100,000.00 in certificates of deposit on deposit in Guaranty Federal Savings & Loan in Lake Charles. As a result of this Court's dissolution of the wrongfully issued temporary restraining order, and extensions thereof, appellant is hereby awarded, as damages pursuant to La. C.C.P. Article 3608, $500.00 in attorney's fees. The judgment of the District Court is affirmed in all other respects.
Costs are assessed four-fifths to appellant, Marie Leone Woods Vice, and one-fifth to appellee, Marie Brandon Vice, as executrix of the decedent's estate.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] The separate or community nature of the movables is not at issue on this appeal.
[2] Appellant, against whom the temporary restraining order was directed, consented, on or before October 12 (as reflected in a judgment signed by Judge Babineaux on October 20), to the extension of the order "until such time as this Court shall hear the Rule for Preliminary Injunction, or until the further order of this Court, with full reservation of all rights under motion to dissolve filed by Leone Woods Vice." (Emphasis added). A similar order submitted by attorney for appellees and signed on the same day (October 20) by a different judge did not include a reservation of appellant's rights. However, nothing indicates that this extension order was ever acquiesced in by appellant. Therefore, appellant is not estopped from assailing the correctness of the restraining order since she agreed to the open-ended extension only after reserving her rights to dissolve the order.
[3] Appellees do not contend that the temporary restraining order was issued pursuant to another law which specifically provides for its issuance under this set of circumstances, and we know of no such law.
[4] Sequestration of co-owned property by one of the co-owners has been approved in Interstate Land Co. v. Doyle, 120 La. 46, 44 So. 918 (1907), and in Le Blanc v. Guy, 14 La.App. 162, 128 So. 715 (2nd Cir. 1930).
[5] Marie Brandon admits that decedent obtained a judicial divorce from her in 1953 but claimed, in a divorce proceeding begun by her against decedent in 1973, that this divorce was invalid. Decedent answered her divorce suit by alleging the 1953 divorce was valid.
[6] Before that Article was repealed by Act 709 of the 1979 Regular Legislative Session.
[7] By showing, for instance, that appellant was unaware of the agreement prior to the judicial confession. We note, however, that the appellant has not argued that the judicial confession was made through an error in fact.
[8] Appellant did prove that decedent issued to her prior to their marriage a $25,000.00 promissory note payable on demand. The value of this debt is hardly commensurate with the value of the property allegedly given in payment to the appellant (the $100,000.00 in CDs).
[9] The evidence on this point favors the trial court's holding also. The decedent may have intended to effect a dation en paiement to appellant, but he was unable to effect a name change on the certificates prior to his death. We decline to say whether such a name change, if it would have been accomplished, would have been a sufficient delivery within the contemplation of Article 2655 and cases thereunder.