496 So.2d 1180 (1986)
SUCCESSION OF Donald F. BLYTHE.
No. 86-CA-210.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
Writ Denied December 12, 1986.
Rene R. Nicaud, Nicaud, Justrabo & Rousset, J. Courtney Wilson, New Orleans, for appellant.
L. Kevin Coleman, Trapolin & Coleman, New Orleans, for appellee.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
This appeal of Diana Dawson Blythe is from the judgment of the District Court of November 4, 1985, denying her rule to traverse the sworn descriptive list so as to include a claim of the separate estate of Donald Blythe for reimbursement from his second community. We affirm.
Diana Blythe is the daughter of the decedent Donald Blythe from his first marriage. Mr. Blythe and Diana's mother were divorced, and he subsequently married Carol Sicard (Blythe) in 1967. In 1956, Mr. Blythe, along with two brothers, was apparently an heir to the property in his father's succession, subject to the usufruct of his mother. The property comprising that succession was chiefly composed of numerous parcels of real estate, most of which were undeveloped and valued at various sums, from several hundred to several thousand dollars.
Over a period of years, numerous pieces of these properties were sold. In her rule to traverse, appellant alleged that some $168,468.58 in separate funds were received by the decedent during his marriage to the second Mrs. Blythe. She further alleged that such funds were used to satisfy community obligations, and for ordinary and customary expenses of the second marriage, as well as for the support, maintenance, and education of Mrs. Blythe's children (from a prior marriage). Mr. Blythe died in February, 1982.
*1181 The estate of Donald Blythe has been subject to protracted litigation since the petition for probate of Mr. Blythe's will was filed in March, 1982. In the succession proceedings, Sandmann G. Davies (the executor of the estate) filed a detailed descriptive list which evidenced the value of the total second community at $148,912.81, the decedent's share being $74,456.40 and the total value of the separate property was $160,616.83. It is that sworn descriptive list that appellant sought to traverse.[1]
After trial on the merits, the trial court denied the rule to traverse without written reasons. On appeal, appellant specifies the following assignments of error:
1. The Court erred in rendering judgment against appellant's claim for restitution of separate property and in holding that claimant must not only show with reasonable certainty that separate funds were received and used for the benefit of the community, but must further establish for what specific purposes specific receipts were used and that the community investment benefits from separate funds existed at the termination of the community.
2. The Court erred in applying a stricter burden of proof than required and thereby worked a forfeiture of one-half of the decedent's separate property to the second wife.
At the outset, we are unable to find support for those portions of the specifications of error which assert that the trial court applied "a stricter burden of proof than required;" or held that appellant must establish for what specific purposes specific receipts were used. For that matter, we cannot determine the source of most of the averments made by appellant which purport to state reasons for the trial judge's decision. Oral comments by the court, as well as written reasons, are absent from the record. Therefore, we can address only the first portion of the first assignment of errorthat the trial court erred in denying appellant's claim for restitution of separate property.
Appellant sought relief under the following Civil Code Articles:
Art. 2365. Satisfaction of community obligation with separate property
If separate property of a spouse has been used to satisfy a community obligation, the spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
Reimbursement may only be made to the extent of community assets, unless the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community. In the last case, the spouse is entitled to reimbursement from the other spouse even if there are no community assets.
Art. 2367. Use of separate property for the benefit of community property
If separate property of a spouse has been used for the acquisition, use, improvement, or benefit of community property, that spouse upon termination of the community is entitled to one-half of the amount or value that the property had at the time it was used if there are community assets from which reimbursement may be made.
Buildings, other constructions permanently attached to the ground, and plantings made on community property with the separate assets of a spouse become community property. Upon termination of the community, the spouse whose assets were used is entitled to one-half of the amount or value that the separate assets had at the time they were used if there are community assets from which reimbursement may be made.
Diana Blythe contends that decedent averaged less than $6,000 per year net income[2] *1182 for the years 1968 through 1979, and that Carol Blythe contributed virtually no income. Yet, appellant maintains, Donald and Carol "lived in moderate style they owned the home on which they made substantial monthly payments, two automobiles, property in the Bahamas, paid Yacht Club dues, etc." These extravagances were allegedly in addition to the ordinary and customary expenses of the marriage, the support of Carol Blythe and her four children, and a particular community obligation (consisting of loan to finance an automobile dealership between Mr. Blythe and his two brothers). Therefore, concludes appellant: "It is unreasonable to conclude that this style of living and solvency could have been sustained on an annual net income of less than $6,000.00 per annum during these years, i.e., 1968-1979. The only reasonable conclusion is that this small income was augmented by capitalthe proceeds of the separate realty sold, amounting to $123,737.49." [sic]
Appellant introduced copies of numerous acts of sale and transfers of the separate property involving Mr. Blythe, his brothers, and his mother (until her death in 1972). Further, a summary of Mr. Blythe's tax returns during the years 1968-1979 were offered to prove Mr. Blythe's reported (earned) income. There was also a summary, introduced by stipulation, of the various sales and the amounts received; the stipulation did not include Mr. Blythe's actual realized portion from any sale.
The only evidence as to the lifestyle and expenses of the marriage and second community came from the testimony. Sandmann Davies, a longtime friend of Mr. Blythe and the executor of his estate, stated that Mr. Blythe appeared to have been in "a pretty tight financial situation." He testified that Mr. Blythe did not spend much money, that his activities were limited and "I would say it was a very calm sort of life that Donald led." In the last years of his life, Mr. Blythe had a job that produced substantially more income "which was a real shot in his arm. Because prior to that time, he had gotten to a point where he was really almost destitute ... and I think that helped sustain himself [sic] and pay back some debts to me that I had to lend him money when he didn't have any money to live on."
Mrs. Blythe stated that when she married the decedent, she had a houseful of furniture, an automobile, a job, and a few thousand dollars. During the marriage, Mr. Blythe had purchased a new automobile as a gift for her.[3] Mrs. Blythe did not participate in the family business. She received child support from her first husband, who also paid college expenses for the children. Mr. Blythe paid child support and educational expenses for his daughter, the appellant. Mr. Blythe handled the family accounts until 3 years before his death, at which time Mrs. Blythe began to help. This was the only other testimony about the lifestyles of the Blythes.
Gertrude Iverson, the accountant who prepared Mr. Blythe's tax return, and had previously worked with the Blythe family's estate and business since 1953, stated, by deposition, that Mr. Blythe's income from 1968 until his death could be summarized thusly: Mr. Blythe did not realize anything from the sale of any of the estate property until after his mother's death (in 1972). Mr. Blythe received a salary of $86.34 a week as compensation for operating a business which essentially liquidated the estate property. His mother received all proceeds from the sales. Around 1969 or 1970, the income from the sales of land dwindled (they were "bonds for deed" in which the purchasers made small, apparently irregular, periodic payments) and, afterward, the only income realized by Mr. Blythe was the aforementioned weekly salary. Generally, there was no "replacement" income (replacing the loss of income from diminished sales). Mr. Blythe borrowed money and had "excessive" interest expenses in relation *1183 to his income. Other than the wages reported on the tax returns, Mrs. Iverson knew of no other income which Mr. Blythe may have had.
Under the articles providing for reimbursement of separate funds, the burden of proof is on the party claiming reimbursement. See Patterson v. Patterson, 417 So.2d 419 (La.App. 1st Cir.1982):
"The burden of proof is on the party claiming he made loans to the community to show that separate funds existed and that those funds were used for the benefit of the community." [emphasis supplied] In denying a claim for restitution of separate property allegedly used for the benefit of the community, the First Circuit, in Adams v. Carter, 393 So.2d 253 (La.App. 1st Cir.1981) stated:
We find that this claim has not been sufficiently proven. First, there is no evidence as to what particular property was sold nor as to what Mrs. Adams did with the funds. She could have used the funds for the benefit of her separate estate, in which case no reimbursement would be due.
In the absence of compelling proof that a strong and substantial economic advantage inured to the community, the wife's restitution claim will be denied. Succession of Vice, 385 So.2d 554 (La.App. 3rd Cir.1980).
Appellant cites Succession of Videau, 197 So.2d 655 (La.App. 4th Cir.1967) to stand for the proposition that proof is sufficient if the separate funds were received during the community and under such circumstances that it would not be reasonable to assume that the community had not benefitted from the use of the separate funds. To quote Videau:
However, the proof of benefit to the community need not be with absolute exactness. Such a requirement could rarely, if ever, be met and just claims would be defeated. Recovery has been allowed upon circumstantial evidence in situations where the court was convinced that the community had received the benefit. "Each case must be disposed of under its own particular state of facts, as shown by the record." Succession of Kidd, 51 La.Ann. 1157, 26 So. 74
In Videau, the claimant's community started with nothing and was valued at $250,000.00 at dissolution; Mr. Videau earned only $12,000.00 per year, yet his family enjoyed a high standard of living; and Mr. Videau was a president and successful businessman, who was never in debt. The court found that his investments in securities which produced the major portion of community assets could not have been possible except for the capital from his separate estate.
The present case is markedly different. There was no evidence that Mr. Blythe enjoyed a high standard of living; on the contrary, until the last years of his life, when he became employed as a "land man", his financial situation became increasingly desperate. He borrowed money from Mr. Davies to live on and was "practically destitute." There was no evidence to support the charges that the Blythes belonged to a "Yacht Club", or even owned a boat, or in any way enjoyed anything other than an extremely moderate lifestyle. No evidence was offered to indicate the amount or even payment of substantial monthly payments on the community home. There was no proof whatsoever as to either Mr. Blythe's receipt of separate funds, nor of the use to which he may have put any such monies.
As to the note or loan concerning the Toyota dealership, testimony revealed that Joseph Blythe paid the indebtedness on the note himself and there is no evidence that Donald Blythe (as alleged by appellant) paid any portion of that note, or that part of the proceeds of a sale of estate property on Downman Road was used to pay this loan.
There is a complete lack of evidence, either direct or circumstantial, that the community benefitted from the use of Mr. Blythe's separate property and nothing in the record approaches the standard of "compelling proof" required in Vice, supra *1184 and Succession of Russo, 246 So.2d 26 (La.App. 4th Cir.1971).
The trial court was apparently not convinced that the community benefitted from Mr. Blythe's separate property, and we cannot say that this was clearly wrong. Mr. Blythe had separate obligations, such as the support and education of his daughter, toward which any separate funds could have been put. Mrs. Blythe came into the marriage with substantial, if not excessive, assets. Under the particular facts of this case, and the record before us, we are unable to conclude that appellant sustained the burden of proof required to support an action for reimbursement to the separate estate of her father from the community estate. We find no error in the ruling of the learned trial judge. In fact, we agree completely.
For the foregoing reasons, the judgment of the trial court denying appellant's rule to traverse is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] Included in the rule to traverse were demands for accounting by Mrs. Blythe and probate of a codicil to the decedent's will. These issues were judged separately and are not before us on appeal.
[2] We must presume that appellant refers to net earned income.
[3] The purchase of this automobile appears to generally coincide with Mr. Blythe's employment and greatly increased earnings.